## No. 7702.

### L. K. PERSON vs. B. F. O'NEAL AND OTHERS.

Land cannot be validly sold for taxes without a legal assessment: and an assessment is not legal which does not contain a description by which the parts of the government subdivisions belonging to the delinquent can be ascertained and separated from the parts of the same subdivisions belonging to other persons.

Where land is assessed as the property of an owner unknown, the appointment of a *curator ad hoc*, and the service of notice on him ten days before the seizure, are indispensable prerequisites to a sale for taxes.

Where the seizure was made on the 12th June, by recording in the book of mortgages, the advertisement on the fourteenth was premature ; and the sale on the 25th June was also premature and void.

The publication of notice of a tax-sale by two insertions in a weekly paper is not a compliance with.the law which required notice by publication three times in ten days, or by posting for ten days.

An illegal or insufficient assessment, and the want of personal notice to the owner, or his agent, or *curator ad hoc*, ten days before the seizure, are radical defects, which are not cured by the prescription of three years, nor by that of five years.

The effect of that clause of article 118 of the constitution of 1868, which made the deeds of tax collectors *prima facie* evidence of valid sales, was to impose on the person attacking such sales the burden of proving that they had not been made in accordance with the requirements of the law.

A sale for taxes in 1875, before the expiration of the delay granted to all taxpayers by the act of 1875, p. 106, was a trespass and a nullity.

APPEAL from the Eighteenth Judicial District Court, parish of Bossier. *Turner*, J.

T. T. & A. D. Land, for plaintiff and appellant:

First—Parol evidence is inadmissible to prove a list or return of property by a taxpayer to the collector for the assessment of taxes. The law requires the list or return to be in writing and signed by the taxpayer himself, and verified by his affidavit. See Acts of 1871, page 112, secs. 23, 24, and 25 ; and in the absence of such a list the assessor and collector must ascertain and give the true and correct boundaries of the taxpayer's lands. Secs. 32 and 36, Acts of 1871, pp. 14 and 15 ; 14 A. 209.

Second—The defendant, relying on a tax-sale for his title, is bound to show not only the existence of an assessment, but also its legality. He has shown an assessment of the lands, and the question to be determined is, whether that assessment was legal. "In forced sales for taxes, every formality of the law must be strictly complied with, under the pain of nullity." Nancarrow vs. Weathersbee, 6 M. S. 348 ; Smith vs. Corcoran, 7 L. 50 ; Reeves vs. Towles, 10 L. 283 ; 13 S. 205 ; 4 A. 248 ; 6 A. 542 ; 8 A. 19 ; 10 A. 329 ; 13 L. 210 ; 15 A. 15 ; 29 A. 508 ; 30 A. 175, 298. According to the doctrine of these decisions, the assessment of the plaintiff's land without an accurate description of the boundaries, and assessed with other lands belonging to third persons, present in the State with titles of record, was an absolute nullity, and conferred on the tax collector no authority whatever to seize, advertise, and sell them for the taxes of 1872.

Third—The sixth ground of nullity alleged in plaintiff's petition is, that there was no legal seizure of his lands for the payment of taxes, in this, that there was no description of them as required by law in the mortgage-book of Bossier parish by the tax collector ; he being required to record a correct and accurate description of the lands in order to effect a legal seizure.

Fourth—The collector did not give the ten days written or printed notice to the plaintiff or his agent, as expressly required by law, before making a seizure, by recording the list or return of assessment in the mortgage-book of the parish. The failure to give this notice vitiates the sale. 30 A. 871 ; 29 A. 508, 112 ; 30 A. 175 ; Act of 1873, sec. 1, pp. 98 and 99.

Fifth—The lands could not have been legally sold before the 28th day of June, 1873, when, in fact, they were sold on the 25th. They should have been advertised three times within the ten days, when, in fact, they were only advertised twice. 31 A. 661.

Sixth—The formal tender required by Article 407, C. P., is not required in an action to redeem lands sold for taxes. Brooks vs. Hardwick, 5 A. 675 ; Coleman, Executor, vs. Percy Baker, 24 A. 524.

Seventh—Replications are not permitted by our law, and all allegations in the answer are open to every objection of law and fact, as nonage, coverture, fraud, prescription, and the like, or if specially pleaded. 2 Hennen's Digest, page 1155; Pleading V. (c) 2; Ib. Pleading VI. (A. 1) page 1163.

Eighth—The nullity apparent on the face of the deed in this case is, that the collector sold the lands of the plaintiff, on the 29th day of June, 1875, in contravention of the prohibitory statute of that year, enacted for the relief of delinquent taxpayers. These authorities demonstrate that no action was necessary to set aside the tax-sale of 1875, and that no tender on the part of the plaintiff was required before bringing his suit.

Ninth—The prescription of three years is pleaded under section 5 of the act of 1874, p. 155. That section is unconstitutional. Constitution of 1868, arts. 10, 110, and 115.

Tenth—The prescriptions of the Civil Code apply to tax-sales. 10 A. 327; 10 A. 671.

Eleventh—A purchaser in bad faith, at a tax-sale, acquires no title.

Twelfth—A purchaser at a tax-sale, where there was not the description of the land required by law, can only acquire title by the prescription of thirty years. 15 A. 15; 29 A. 509; 30 A. 175.

Thirteenth—It is only the possessor in good faith, under the Civil Code, who is entitled to recover the value of improvements, and to gather for his benefit the fruits of the thing until it is claimed by the owner, except from the time of judicial demand. C. C. 3453; 4 N. S. 260; 12 A. 545; 16 L. 430.

Fourteenth—A possessor, without just title, owes the fruits and revenues from the commencement of his possession. 7 N. S. 112; 6 R. 192; 12 R. 256; 3 A. 258; 6 A. 356.

J. A. Snider, contra:

First—The owner must tender to the purchaser of land at a tax-sale the taxes paid by the latter before he can sue to recover the land. 30 A. 1232.

Second—A *substantial* compliance with the law touching the disposition of property at tax-sales is sufficient. Cooley on Taxation, pp. 324, 205.

Third—In the case at bar the plaintiff furnished the description to the tax collector in 1871, and in 1872 the same tax collector copied the list of the latter year from that of the former. The plaintiff was a non-resident, and the tax collector, " in default of the taxpayer to furnish a description " for 1872 of his property, did describe it " according to his (the tax collector's) knowledge," etc.

Fourth—Again, section 40 of the act required the clerk, recorder, and sheriff of the parish to assess the property d 'scribed in descriptive rolls, and to give notice, etc. This notice was given in the Bossier Banner, the official journal of Bossier parish, in exact accordance with the laws. Said notice was published weekly, for five weeks, beginning with the issue of date July 13th, 1872, and ending with that of August 10, 1872. T. p. 190. State vs. La. Ins. Co., 19 A. 474 ; Dailey vs. Newman, 14 A. 580. The plaintiff is presumed to know the law, and he had from the first of August to the first of September, 1872, to appear before the board of appraisers constituted by law, and to correct the description or the valuation of his property. The list was made out in his name by a description given by him to the proper officer; he had his month in which to revise it.

Fifth—The land was advertised in the Bossier Banner, the official journal of Bossier parish (a weekly journal, no daily being published in said parish), in its issues of June 14th and June 21st, 1873 (T. p. 109), and the sale took place June 25, 1873. These facts are shown by the advertisement, by the recitals in the deed, by the production of papers, and the testimony of its proprietor. There were *ten clear days* between the first publication of the sale and the sale, and the law was complied with so far as it is possible to do so in the country. The law says, "in the country parishes by public notice for sale, ten days." Arts. 1116 and 1117, Rev. Civil Code, determine what *public notice* is, and how it must be given. The latter article (1117) expressly sanctions the giving of *public notice for ten days*, by advertisement "inserted as often as the gazette appears during that time," in all the country parishes. This view of the point under discussion seems to have been sanctioned by the court in Renshaw, Cammack & Co. vs. Imboden et al., 31 A. 662.

Sixth—Section 2809, Rev. Stats. of 1870, and Rev. C. C. art. 3543, establish the prescription of five years against all informalities connected with or growing out of any public sale made by any person authorized to sell at public auction, etc. This prescription runs from the time of making the sale, and runs against minors, married women, or interdicted persons. It is the legislation embodied in sec. 4 of the Act of March 10th, 1834.

Seventh—But a more serious prescription for plaintiff is that of three years, as found in section 5 of Act No. 105 of 1874, page 155. That section reads as follows : "Be it further enacted, etc., That no writ of injunction shall issue against any tax collector, sheriff, or purchaser proceeding under this act, *and any action to invalidate the titles* to any property purchased at tax-sales *under or by virtue of any laws of this State* shall be prescribed by a lapse of *three years* from the date of such *sale.*"

Ninth—The purchaser at tax-sale has a right to demand the value of
all improvements he has made on the lands. Act No. 100 of 1873;
C. C. 3451, 3453; 15 A. 698; 18 A. 407.

Tenth—A tax-title is *prima facie* valid, and it cannot be attacked col-
laterally. Constitution of 1868, article 118; 29 A. 112; Cooley on
Taxation, 329, 330, 331.

----

The opinion of the court was delivered by

MARR, J.   Plaintiff seeks, in this action, to recover certain land on
the Red River, in the parish of Bossier, which was sold in 1873 for the
taxes of 1872, and purchased by defendant O'Neal. He alleges the
nullity of this sale on several grounds; and that, after the sale, he
tendered to O'Neal the amount of the taxes, costs, and penalties for which
the land was sold: and he claims $5000, damages for waste committed
in the cutting of timber and cord-wood, and $3000 for the rents and
revenues.

Defendant O'Neal alone appeared; but as he claimed title no fur-
ther notice need be taken of the other defendants. He excepted that
plaintiff had not, before bringing the suit, tendered to him the taxes,
costs, and penalties; and that this was a condition precedent to the right
of action. This exception was referred to the merits. Answering to the
merits, defendant repeated his plea of want of tender; and he claimed
title to part of the land described in the petition under the sale in 1873,
and to the remainder under a sale in 1875 for the taxes of 1874. He
also claimed, in the event of a judgment in favor of plaintiff, $3000, for
taxes paid, and expenditures for improvements.

The judgment of the district court was against plaintiff, as in case
of nonsuit, for the land sold in 1875; and in his favor for that sold in
1873: and it condemned plaintiff to pay defendant $745, for the differ-
ence between the rents and the expenditures for taxes and improve-
ments. Plaintiff appealed; and defendant in answer to the appeal
prayed that the judgment be so amended as to conform to the prayer of
his answer to the merits.

Plaintiff, in his petition, describes the land claimed by him, as all
that part of section 14, all that part of fractional section 22, and all that
part of fractional section 23, in township 17, range 13, lying south of
or below a certain boundary line as established by a judgment and
survey in the suit of Jacob Irwin vs. L. K. Person, No. 611 of the docket
of the district court of Bossier parish. This was part of a tract ac-
quired by the planting partnership of Person & Irwin, in 1847, on which
they established a plantation.

In 1854 Irwin brought suit against Person for a partition, describing
the land, held in common, as the south half of section 14: the south-

·east fractional quarter of section 15: the northeast and the southeast fractional quarters of section 22; and the entire fractional section 23, containing, according to the original government surveys, 1127 acres. The land was carefully surveyed for the purpose of partition; and the quantity was found to be 1120 acres. It was valued by experts; and the actual partition was made in 1856, and confirmed by final judgment in March, 1857. The whole was separated into two parts by running a line north, 69 deg. 30 min. east, from a point on the river, about the middle of the western boundary of the fractional quarters of section 22, through that section and across sections 23 and 14 to the eastern boundary of section 14, so as to leave on the north side of this line all of the south half of section 14, except a small triangle, about 40 acres, in the south-east corner, comprised within this division line, the eastern boundary of section 14, and the southern boundary of 14, which is, also, the northern boundary of section 23: all of the fractional quarter of section 15: about half of the two fractional quarters of section 22; and a small triangle, containing about 40 acres, in the northwest corner of section 23, com-prised within the division line, the western boundary of section 23, which is the eastern boundary of section 22, and the northern boundary of section 23, which is the southern boundary of section 14.

The land north of this division line was worth more per acre than that south of the line; and this line was so run as to equalize the value of the two tracts, by leaving 475 acres on the north side, and 645 acres on the south side, by actual survey. The portion north of the line fell to Irwin, who sold it to Hart; and it now belongs to the succession of Hart. The portion south of the line, consisting of the triangle at the southeast corner of section 14: about half of the fractions of section 22 east of the river; and all of fractional section 23, except the triangle at the northwest corner, was allotted to Person. This is the land claimed by him in this suit; and it is plainly shown by the survey and plat and the proceedings in the partition suit.

In 1871, and again in 1872, the whole of the land which had be-longed to Person & Irwin, except the southeast fractional quarter of section 23, was assessed as the property of Person. By the government surveys the whole tract contained 1127 acres; and the southeast frac-tional quarter of 23 contained 150 50-100 acres: so that the land thus assessed was about 977 acres, or about 330 acres more than all that was allotted to Person in the partition.

On the 12th June, 1873, the collector made a seizure for the taxes of 1872, by recording, in the mortgage-book of the parish, the amount of taxes assessed in the name of Person, $34 75, and the following descrip-tion of the land: The south half of section 14: the southeast fractional quarter of section 15: the fractional part of section 22; and the north-

east quarter, the northwest quarter, and the southwest fractional quarter of section 23, township 17, range 13, Northwest Louisiana. This description included the whole of section 23, except the southeast quarter.

It will be observed that of this whole body of land thus assessed and seized as the property of Person, he owned no part of the south half of section 14, except the triangle at the southeast corner: no part of the southeast fractional quarter of section 15: that he owned about half only of the two fractional quarters composing the east half of fractional section 22; and that he did not own the triangle already described at the northwest corner of section 23.

Having thus made the seizure on the 12th June, the collector, on the 14th June, advertised the land for sale, in the Bossier Banner; and that advertisement appeared again in that paper on the 21st June. The sale was made on the 25th June, and the collector's deed on the 26th.

The description in this deed is the south half of section 14: the southeast quarter of section 15: the fractional part of section 22 east of the river; and "the southwest fractional section" 23, T. 17, R. 13. This deed was confirmed by the Auditor on the 12th March, 1874, by the same description. But this description is not in conformity with that in the recorded seizure, in which the land in section 23 is described as the N. E. ¼ and the N. W. ¼ and the S. W. fractional quarter. The description of the land in this section, in the two deeds, is "the southwest fractional section 23," which designates no subdivision of land, nor could any land be located by such a description.

We attach no importance to the statement that plaintiff when he paid the taxes in 1871 or 1872 gave the collector a list of his land for taxation; because that list was not produced, and he says he referred the collector to the records for the metes and bounds.

The law in force at the time this sale was made required the tax collector to give notice, by publication, for twenty days, requiring the taxes to be paid: that is, general notice to all taxpayers. If the tax was not paid within ten days after the expiration of this notice, the collector was authorized to give ten days written or printed notice, that is personal notice, to the owner or agent of the property assessed; and if the tax was not paid at the expiration of this delay, the collector was authorized to make a seizure by recording a description of the property, with the amount due, in the mortgage-book of the parish: and, on the fourth day of such recordation "he shall proceed to sell, without legal process, after advertising three times within ten days, in the official journal; and, in the country parishes, where such publications cannot be made, by public notice for such ten days." See act of 1871, p. 120, section 57; act of 1873, p. 98, section 1.

The law also required, where the owner was unknown or absent, that the collector should apply to the parish or district judge, and have a *curator ad hoc* appointed, and to serve the ten-days notice on him prior to the seizure. Act of 1873, p. 100, section 5. The records of Bossier parish furnish no evidence that any such application or appointment was made in this case ; and Person was absent, and was a non-resident, having resided in the State of Arkansas for many years. The appointment of a *curator ad hoc* is a judicial proceeding, in a court of record ; and, while we may admit that parol testimony may be resorted to to prove the loss of a record, and the contents, such testimony is clearly not admissible to prove a judicial proceeding until it has first been shown that such proceeding was had, and that the record evidence of it has been lost or destroyed. No witness proves that the collector applied for appointment, or that the appointment was made in this case. There is proof tending to show that notice was served on a person who was appointed curator in some forty cases of tax-sales ; but O'Neal, the defendant, testifies that he made thorough search, and could find no trace, in the records of the parish, of any such application or appointment in this case.

The law required that land assessed should be designated by name, if it have a known name, by the name of the owner, if he be known, and by the boundaries ; or by the boundaries alone, if the other particulars be not known. Act of 1871, p. 114, section 32.

The tax-sale is fatally defective.

1. The land described exceeded by more than 300 acres the quantity owned by Person. The description omitted 150 50-100 acres, which constituted part of the tract allotted to him, and it included the parts of four sections which fell to Irwin in the judicial partition. There was not, either in the assessment, or the seizure, or in the deeds of the collector and the Auditor, any description by which the parts of the government subdivisions which belonged to Person could have been ascertained or separated from the parts of the same subdivisions which belonged to the succession of Hart. Of course defendant cannot pretend to claim title under this sale to the southeast fractional quarter of section twenty-three, which was wholly omitted in the assessment, in the seizure, and in the deeds.

2. The seizure having been made on the 12th June, conceding that the previous notices had been given, which is not proven, the collector had no authority to proceed further until the fourth day, the 16th of June. The advertisement on the 14th was premature ; and the sale on the 25th was also premature.

3. The Bossier Banner being a weekly paper, notice by publication, three times in ten days, could not have been given in the regular issues.

·of that paper ; but the law, anticipating this, required the collector, in :such cases, to give public notice for ten days, that is, by posting. The record furnishes no evidence of notice, except that published on the 14th and 21st June.

The assessment, the seizure, the sale, were nullities for want of a proper description of the land : for want of personal notice : for prema- ·turity of the advertisement on the second day after the recording of the seizure ; and for want of the three publications, or posting for ten days, as required by the statute. See Renshaw vs. Imboden, 31 A. 661.

As to the plea of want of tender, the proof is that plaintiff did, in 1874 or 1875, at the office of defendant, tender to him $200 in order to redeem his land. Manifestly, plaintiff was under no obligation to ten- der so large a sum. The taxes for which the sale was made amounted to $34 75, and they were assessed on more than 300 acres which did not belong to plaintiff. The price was $52 45, which paid the entire tax, costs, and penalties on the whole body of land. There was no means by which plaintiff or defendant could have ascertained what part of this sum was due by plaintiff, because the assessment, the seizure, and the ·sale included such a quantity of land which did not belong to him, and which was, probably, more valuable than his. In 1856 the 475 acres which fell to Irwin were valued by the experts as being equal to the 645 acres which fell to plaintiff. The whole of that which fell to Irwin was in- cluded, while only 495 acres of the 645 which belonged to Person were assessed ; and there is no proof of any change in the relative values ·since 1856.

It is urged that the constitution of 1868, art. 118, made the deeds of tax collectors *prima facie* evidence of valid sales. That is true ; but ·the *prima facie* evidence in this case is contradicted by the positive proof that the sale was not in accordance with the requirements of the law.

It is also urged that, by the act of 1874, p. 155, section 5, any action to invalidate the title to any property purchased at tax-sale under or by virtue of any law of this State shall be prescribed by the lapse of three years from the date of such sale. But in all forced alienations it must ·appear, *prima facie*, by the recitals in the deed, *or aliunde*, that the sale was made in accordance with the law. Without citation, a judgment is void. Without a description of the taxpayer's property, by which it ·can be distinguished and taxed separately from the property of others, there can be no legal assessment ; and a valid assessment is as essential to a sale for taxes as a valid judgment is to a sale under *fieri facias*. Without the previous personal notice to the former, or his agent, or the curator *ad hoc* lawfully appointed to represent him, there can be no valid seizure for the taxes ; and without the delays, and publications or

posting, no valid sale can be made. Whatever defects in a tax-sale may be cured by the lapse of three years, the want of personal notice to the owner, or his agent or curator cannot be, because such notice is a condition precedent to the seizure, without which there could be no sale.

Defendant also invokes the prescription of five years, established by the Act of 1834, re-enacted in 1855, and again in Rev. Stats. of 1870,. section 2809. This statute cures informalities not radical defects in public sales, Woolfolk vs. Fonbene, 15 An. 15 ; and an illegal or insufficient assessment is a radical defect. Thibodeaux vs. Keller, 29 An. 510.. Besides, on the 5th February, 1877, defendant addressed a letter to plaintiff, in which he offered to find a purchaser for the land if plaintiff would sell at a satisfactory price. This was an acknowledgment of plaintiff's right, and an interruption of prescription. R. C. C. art. 3520.

Defendant also claims in virtue of the sale in June, 1875, for the taxes of 1874. On the roll of 1874 certain land is assessed as the property of "unknown No. 2." The quantity is 1327 acres, in sections 12, 13,. 14, 22, 23, 24, 25. No part of this land belonged to plaintiff, except that which is described as the N. ½, and the N. W. ¼ of the S. W. ¼, and the N. E. ¼ of the S. W. ¼, and the S. E. ¼ of section 23 : and of these subdivisions of this section all were included in the seizure in 1873, and were actually claimed by O'Neal, except the southeast quarter, containing 150 50-100 acres. The total tax on this large body of land amounted to $26 15 ; and it was adjudicated to O'Neal for $43 14, which sufficed to pay the entire tax and costs. The greater part of this land belonged to the succession of Hart ; and, on the 27th September, 1877, in consideration of the payment to him by Mrs. Hart of this sum, O'Neal renounced in her favor all claim to the land which fell to Irwin in the partition of 1856, and to 480 acres in sections 13 and 24. Having received from Mrs. Hart all that he paid for the taxes on 1327 acres, O'Neal demands with a bad grace the re-imbursement by plaintiff of any sum on account of the small portion of land belonging to him included in the assessment, seizure, and sale of the 1327 acres.

The titles to the land assessed in 1872 as the property of Person, and to the lands assessed in 1877 as the property of "unknown No. 2," were public, of record, and of long standing ; and the tax collectors do not discharge the duties incumbent on them when they describe for assessment, as the property of " unknown," lands which belong to several different persons, whose titles are accessible in the records of the parish. It is their special duty and business to examine the public records, and to ascertain the names of the owners, and proper descriptions of all taxable lands. We should not be inclined to treat as valid a sale for taxes of land assessed as the property of " unknown," when the ownership could be so easily ascertained ; nor to sanction an assess-

ment as the property of such "unknown," of an entire body of 1327 acres belonging to different proprietors.

But there is a cause of nullity in this case which is patent and incurable, as we had occasion to decide in the Workingmen's Bank vs. Lannes, 30 An. 871. By the act of 1875, p. 106, a delay until the first of November was granted to all taxpayers throughout the State. It was therefore unlawful for the collectors to enforce payment of the taxes before the expiration of that delay; and a sale in the meantime was a trespass and a nullity.

The plaintiff is clearly entitled to recover the lands described in his petition; and the only remaining question is as to the rents and revenues, and the claim of defendant for expenditures for taxes and improvements.

The evidence shows that many years since Person removed to Arkansas, and that he has not cultivated this land since 1868, and has not seen it since 1869 or 1870. It is a low place, subject to overflow. The houses were in a dilapidated condition in 1873 : the greater part of the fencing was gone : there were some breaks in the levee ; and much of the land which had been cultivated was grown up in brush and cotton wood. It was a waste ; and could have had no great rental value in the condition in which it was in 1873. O'Neal caused a part of the land to be cleared and fenced, and some of the cabins were repaired and made habitable. The fencing was of a very inferior character, partly of cotton-wood poles ; and the clearing of the land which had been cultivated up to 1868 could not have been very difficult or expensive.

The evidence does not show, satisfactorily, what part of the improvements was on Person's land. In 1877 O'Neal sold to Boone 100 acres in section 24, which never belonged to Person. Boone lived on this land, and he cleared and cultivated about twenty acres, and put up a dwelling, a stable and crib, and a log cabin there.

We think the district judge erred in considering the tender made by Person as fixing his liability to O'Neal for the amount tendered, $200, for taxes up to the date of the tender. There is an admission that the taxes on plaintiff's land were about $10 . ⸱ ⸱ .

On the whole, our conclusion is that the claim for improvements and taxes is fairly compensated by the use and occupation of the land ; and that the pecuniary demands of plaintiff for rents, revenues, and damages, and of defendant for taxes paid by him and for improvements, are extinguished, the one by the other.

The judgment appealed from is therefore annulled, avoided, and reversed ; and it is now ordered, adjudged, and decreed that plaintiff be recognized and declared to be the owner, and be put in possession of the land described and claimed in his petition ; that is, of the parts of sec-

tions fourteen, twenty-two, and twenty-three, in township seventeen, range thirteen, Northwest Louisiana, lying on the south or lower side of the division line established in the judicial partition between Jacob Irwin & Levin K. Person, in the suit No. 611 of the docket of the district court of Bossier parish; and that Benjamin F. O'Neal, defendant and appellee, pay all the costs in this court and in the district court.