## VOLUME 123.

## CASES ARGUED AND DECIDED IN THE SUPREME COURT OF LOUISIANA.

### AT TERM BEGINNING FIRST MONDAY OF OCTOBER, 1908.

(48 South. 563.)

No. 17,150.

H. F. LEWIS & CO., Limited, v. BROCK.

(Feb. 15, 1909.)

1. VENDOR AND PURCHASER (§ 16*) — CON-
TRACT—CONDITIONS PRECEDENT.

An agreement to buy real estate, "provid-
ed the titles are good and sufficient and approv-
ed by a judgment of court," has no binding ef-
fect until the condition has happened.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 17, 20; Dec. Dig. § 16.*]

2. TAXATION (§ 421*)—TAX SALE—MISDESCRIP-
TION OF PROPERTY.

A tax sale of urban lots, so misdescribed
as not to identify them with lots in the same
square belonging to the tax debtor, vests no legal
title in the tax purchaser.

[Ed. Note.—For other cases, see Taxation,
Cent. Dig. § 720; Dec. Dig. § 421.*]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish
of Orleans; Fred Durieve King, Judge.

Action by H. F. Lewis & Co., Limited,
against Richard Brock. Judgment for plain-
tiff, and defendant appeals. Reversed, and
suit dismissed.

123 LA.—1

George Montgomery, for appellant. H. M.
& E. C. Ansley, for appellee.

LAND, J. The petition represents that on
or about November 20, 1906, the plaintiff
contracted to sell the defendant 13 certain
lots, in square 262, in the Seventh district of
the city of New Orleans, for the price of
$3,000 cash; that plaintiff has tendered to
defendant a complete and valid title to said
property, but that he has refused to accept
the title or to pay the purchase price there-
of; and that plaintiff is entitled to have said
defendant specially perform his said contract
to buy said lots and to pay the purchase
price.

Wherefore plaintiff prayed that defendant
be ordered to comply with his contract to
purchase the property described in the pe-
tition, and to pay the sum of $3,000, the pur-
chase price thereof.

After pleading the general issue, the de-
fendant for further answer admitted that he
agreed to purchase the property described
in the petition for the price therein stated,
and also that the plaintiff had tendered a ti

tle thereto as alleged, but denied that the title so tendered was good, valid, or sufficient, or such a title as the defendant was compelled to take under his contract with the plaintiff. For further answer the defendant set forth alleged defects in the chain of title and prayed to be dismissed, with costs.

The case was tried, and there was judgment in favor of the plaintiff, ordering the defendant to comply with his contract to purchase the lots described in the petition, and against the defendant in the sum of $3,000, upon delivery of the property "by clear and unincumbered title."

Defendant has appealed, and the cause has been submitted to us on the face of the record.

On November 20, 1906, the defendant paid to the plaintiff $1,000 on account of purchase price of 13 vacant lots of ground situated in square 262 in the city of New Orleans and fronting on Monroe, Cohn, Spruce, and Eagle streets; the balance of $2,000 to be paid on terms of credit. The receipt stipulated that, in case satisfactory, legal, and valid titles are not delivered to the defendant, the deposit of $1,000 was to be returned.

On January 4, 1908, the parties executed a written instrument, which, after referring to the prior agreement, recited that it was necessary to institute judicial proceedings to perfect the title, and that, in consideration of the $1,000 already paid and an advance of the further sum of $2,000, the plaintiff agreed to transfer the property to defendant for $3,000, provided the titles were good and sufficient, and approved by a judgment of the court. It was further stipulated that, if the titles were not good and sufficient, the $3,000 was to be returned to the defendant, with 8 per cent. interest thereon from January 4, 1908, and that the defendant was to receive 4 per cent. interest on $1,000 from November 20, 1906, to January 4, 1908.

It was further stipulated that the titles were to be perfected within 30 days from the date of the agreement. This suit was filed a month later.

The lots described in the petition belonged to one Charles Satchell, and were correctly identified in his titles by reference to numbers as per original plan of the subdivision of the square, and also by particular description.

When the said square was incorporated as a part of the city of New Orleans, the board of assessors altered the description without reference to the original plan, and the lots thus misdescribed were assessed and sold for taxes. The purchaser at the tax sale sold by the same misdescription to the Western Land & Immigration Company, which sold to the trustees of the Land Trust of Indianapolis, which in September, 1898, sold by proper description to the Prudential Building & Mortgage Security Company, which in June, 1900, sold by proper description to the plaintiff.

The lots were assessed, advertised, and sold as fronting on other streets, and without reference to any plan whatever. It is evident that lots 30 feet front on Cohn street by a depth of 120 feet are different from lots of the same dimensions fronting on Monroe street. If the tax assessments and sales had been made by reference to a certain map or plan, the result might be different; but as it is the lots described in the petition are not identified with the lots sold at tax sale.

The issue of title raised by the pleadings was not disposed of by the judgment below, which leaves the parties practically in the same position they occupied before the suit was instituted.

Under the very terms of the written agreement of January 4, 1908, defendant was not bound to take the property until the titles were perfected by a judgment of court, and this was to be done within 30 days.

It is therefore ordered that the judgment appealed from be reversed, and it is further ordered that plaintiff's suit be dismissed, with costs in both courts.