On the Merits.
[4] In its first opinion, the Court of Appeal held that the plaintiff in injunction, Dupuy, had abandoned his suit for injunction, and dismissed the same for failure to prosecute it for 5 years under Act 107 of 1898, but on rehearing this finding was set aside, and the cause was decided in favor of the Aztec Land Company, Limited, on the merits, and sustaining the, sufficiency of the description in the deed to it by the auditor. We think the conclusion that the act in question was not applicable to' the present case was undoubtedly correct, for the reason that, while the original petition for injunction had been filed in 1904, and no action looking to its prosecution had been taken since 1905, the subsequent filing, in 1915, of a new petition for injunction, although bearing the same number, seeking to restrain the execution of the ex parte order or decree for possession, can be considered in no other light than a new proceeding unaffected by what had gone before. Then, too, it is doubtful whether, in a case where, as in the present, a party is sought to be dispossessed, and the necessity for aggressive action is upon the one seeking to accomplish that purpose, he who is so proceeded against should be compelled to take the aggressive side of the matter; as to him, all that is desired is accomplished by the issuance of the writ, and the “next move,” so to speak, rests with the plaintiff in the proceeding for possession.
We think Dupuy and his heirs were and are without right or interest to attack the sale by the auditor to the Aztec Land Company, Limited, save and except to the extent that they may be able to establish the invalidity of the tax title by which the state acquired from Robert Simon, or Simeon; for, if it, the state had a good title, those from whom Dupuy purchased after the forfeiture for taxes had no interest to convey, and the state alone would have the right to question the sale to the land company. If the latter transfer were annulled, and the tax forfeiture was valid, the result would be merely to place the property back in the state, and Dupuy and his heirs would be no better off than if the property were held to belong to the Aztec Land Company, Limited.
Therefore the real issue in this case resolves itself into a questibn of the validity of the transfer to the state by the tax collector on February 4, 1885, for the unpaid taxes due by Robert Simeon, which is attacked in the following paragraph of the plaintiff’s petition for injunction, to wit:
“Your petitioner avers that if the property owned by him is intended to be covered by the description of the property mentioned on the writ Of seizure and sale, then petitioner avers that the state of Louisiana never had a title to same, none of the formalities prescribed by law having been fulfilled in the notice, seizure, advertisement and sale to the state by the .tax collector in 1885.”
It is true that the allegations just quoted are largely conclusions of law, and do not charge any facts upon which relief could be granted; but the tax deed under which the state was supposed to have acquired from Robert Simeon in 1885 was by the plaintiff in the proceeding for possession, defendant in injunction, offered in evidence, and is therefore before us for all purposes, especially for the purpose of determining the sufficiency of *683 the description to identify the property so as to constitute a transfer from the tax debtor, Simeon, to the state.
The deed under which Simeon acquired, which is in the French language, describes the property as follows:
“A lot of land situated behind the city and in the parish of Orleans, on the northwest border of Bayou St. John, touching the property of Mr. Arthur Blanc and measuring one hundred and nineteen feet front on said bayou; one hundred and seventy feet deep on the side of the property of the said A. Blanc, and one hundred ana fifty feet or more, also in depth on the other side. Together with all of the dependencies and appurtenances of the said lot of land, rights, privileges or servitudes and others without any exception.”
In the deed, from the tax collector to the state, of date February 4, 1885, the description reads:
“Four certain lots of ground and improvements thereon, in the Second district of the city of New Orleans in square No. 469, bounded by Bayou St. John, Dumaine, St. Philip and Genois streets; said lots measure 121 feet front on Bayou St. John by 150 feet in depth.”
[5] The record shows that defendant Dupuy and his heirs have been in possession of the property claimed by them since purchasing it in 1900, and hence the plea of prescription of 3 years under article 233 of the Constitution, filed, in the district court, has no application. In addition the Aztec Land Company, Limited, allowed its proceeding for possession, which had been enjoined by Dupuy to lie dormant from 1905 to 1912, when the injunction suit was dismissed on an ex parte motion for want of prosecution or abandonment; and no further action looking towards the gaining of possession was taken until 1915, when the second injunction suit was filed. But for the pendency of the proceedings for possession, Dupuy’s deed and possession thereunder would, by the date of the trial in the district court (1915), have perfected his title under the prescription of 10 years provided by the Code, since the land' company claims to have acquired in 1902, and whatever rights the state had, had been disposed of to it, so that prescription would have commensed to run from that time.
The record fails to show that there is any such square as No. 469, bounded by Bayou St. John, Dumaine, St. Philip, and Genois streets. The only proof in the record offered for that purpose consists of three maps introduced by the defendant in injunction, and numbered “D-l,” “D-6,” and “D-7.” The first is referred to in the offering by counsel as “a certified copy of the plan of the square bounded by Dumaine, Bayou St. John, Genois, and St. Philip streets, by D’Hemecourt, made for the drainage commissioners of the first drainage district, on file in the mortgage office. This shows a triangular shaped parcel of ground, with the words “Genois St.” written above the top, “St. Philip St.,” on the right side, “Bayou St. John,” on the bottom or left, and “Dumaine St.,” to the left of the point, or apex, of the triangle. There is nothing to show when it was made, but there appears a certificate thereon by M. L. Zander, “Engineer and Surveyor,” dated April 16, 1915, that:
“This plan is a true copy of the record book showing area and subdivision of squares for drainage records of D’Hemecourt, now on file in the archives of the mortgage office at the civil district courthouse in the city of New Orleans, all as shown on the plan.”
Defendant “D-6,” is referred to in the offering as a “tracing from the map of W. J. Hardee and B. J. Oliveira, made by W. J. Warren.” It bears the legend:
“Traced from city map complied [compiled] by W. J. Hardee & B. J. Oliveira, date Jan. 1S97. • W. J. Warren.”
This sketch or tracing embraces some 12 or 15 squares, and shows “N. Genois” running through from what appears to be Bayou St. John (though not so marked) to the Orleans Canal, “St. Philip” from Carrolton avenue *685 to Bayou St. John, and “Dumaine” from Carrolton avenue to a triangular strip which intervenes between its end and what we take to be Bayou St. John, and there appears between St. Philip and Dumaine, below N. Genois, a fractional square bearing the number 469.
Defendant “D-7” is mentioned in the offering of counsel as a “blueprint copy of the D’Hemecourt map, on file in the office of the city engineer.” It shows a tracing, with broken lines of what purport to be extensions of the three streets mentioned on the three sides of a fractional square numbered 469, but extending back several hundred feet from the bayou and taking in parts of some 7 squares or irregular figures, with solid or unbroken lines, running through both.streets and squares. As just indicated, within these irregular figures, the lines of both streets and squares are broken or dotted, indicating doubtless that the said streets had not been opened up or dedicated through that section, for outside of these the lines are continuous.
None of these maps is identified or proven by the testimony of any witness, nor is there any showing as to the authority under which they were made, and the only date on any of them prior to Dupuy’s purchase in 1900 is that on “D-6,” in the memoranda by W. J. Warren that the city map from which it was taken was compiled by Hardee and Oliveira in January, 1897. There is nothing to show any dedication or opening of these streets in the vicinity of the property claimed by Dupuy, or how the purported square came to be numbered.
On the other hand, Dupuy, plaintiff in injunction, has offered in evidence three maps or sketches, the first certified by D. M. Bros-nan, C. E., on May 20, 1905, a.s having been taken from a plan made by Chas. A. De Ar-mas, September 6, 1859, showing a large part of the property, embracing what would apparently consist of several squares in this immediate vicinity, as belonging to various persons in figures of irregular shapes, with buildings and improvements occupying what are faintly outlined as the extensions of the three streets. Second, a blueprint bearing the legend:
“Property of New Orleans Brewing Company, traced from plan by Pilie. The original plan is dated April 28, 1909, and signed Edgar Pilie. Traced by W. J. Warren, Asst. Engr.”
This plan shows the irregular pieces of property above mentioned, with Dumaine street apparently open to Bayou St. John and barely touching the corner of what purports to be square 469 on the maps offered by the Aztec Land Company, Limited. Broken lines are traced right through the middle of the property labeled “New Orleans Brewing Company” north and east of that referred to above, and are marked “Genois St. and St. Philip St.” but stop entirely at the lines of the irregular figures mentioned as appearing on the first m'ap introduced by plaintiff in injunction. The third map introduced by Dupuy is labeled as follows:'
“Sketch showing conditions on lake side of Bayou St. John from Dumaine street to angle of bayou.
“Scale 1"=30'.
“New Orleans, La., Dec. 20, 1914.
“W. J. Warren, Asst. Engr.
“W. E. Hardee, City Engr.
“Dec. 26, 1914.”
This last map shows a front on Bayou St. John of some 2,000 feet or more, extending from Dumaine street East, and with irregular tracts penetrating north and east to a distance of several hundred feet, and each bearing the name of its supposed owner, including a triangular piece with a frontage on the bayou of 242 feet, and the other two sides measuring respectively 121 feet and 246.77 feet, bearing the name of John E. Dupuy. Buildings and improvements appear to be located at irregular intervals about over the *687 various tracts. There is nothing to indicate St. Philip and Genois streets.
According to the testimony- of W. X Warren, assistant city engineer, these streets have never been opened up or dedicated through this locality, and the property is claimed and much of it occupied by the buildings and improvements of private individuals.
Prom the above it will be seen that it would be impossible to locate square 469 on the ground.
Counsel for the Aztec Land Company, Limited, quotes and relies upon the testimony of the plaintiff in injunction, John P. Dupuy, as sustaining the view that the property described in the tax deed was all that Robert Simeon, or Simon, owned. The testimony is as follows:
“Q. Mr. Dupuy, how long have you been out in that neighborhood?
“A. Oh, I have been there a good many years; I could not tell you exactly.
“Q. Not exactly, but within 5 or 10 years?
“A. About 15 years — 15 or 20 years.
“Q. You know that property out there pretty well, don’t you? »
“A. I should.
“Q. What other property was there in that square 469, that belonged to Robert Simeon, besides that property you have got possession of?
“A. I don’t know. I got possession of all of Robert Simeon’s property.
,“Q. Of all the property he owned in that square ?
“A. Yes, sir.
“Q. How did you find out about that property being sold to Mr. Hammond, at tax sale?
“A. Eh?
“Q. How did you find out about that property being sold to Mr. Hammond at tax sale?
“A. Because the taxes were handed to me by the deputy sheriff, or some of the officials, and I hunted Mr. Hammond, and could not find him.
“Q. You could not find him? That property sold to Mr. Hammond is the same property you are on, isn’t it?
“A. I suppose so. I am not supposing anything.
“Q. Well, you know Mr. Simeon only had one piece of property there?
“A. Well — it was all of it.
“Q. Why didn’t you buy Mr. Hammond out?
“A. Well, I just could not tell you.
“Q. You did not buy Mr. Hammond’s title, because you could not find him?
“A. He could not be found.
“Q. That is the reason you didn’t buy him out?
“A. Yes.”
As a matter of fact, the record, shows conclusively that Dupuy was occupying, and had been since his purchase in 1900, a triangular shaped piece of property, having a front on Bayou St. John of 242 feet, and with the two other sides measuring 121 and 246.77, respectively; while that called for by the tax deed was 121 feet on Bayou St. John by 150 feet in depth. It is true that, subsequently to his purchase in 1900, he obtained from the heirs of Robert Simeon deed to the excess over the calls of the transfer of 1900; but it was the same property that he and Simeon had possessed for many years, and for which no one else, other than the Aztec Land Company, Limited, has made any adverse claim until this day.
[6] In such circumstances, leaving out of consideration the insufficiency of the evidence to establish the square contended for by the land company, and the weakness of the proof that Simeon did not own other property, it was-and would be an impossibility to identify, out of this tract the 121 by 150 feet called for by the tax deed. The tax sale therefore conveyed nothing to the state, and hence it had no title to transfer to the Aztec Land Company. Woolfolk v. Fonbene, 15 La. Ann. 15; Thibodaux v. Keller, 29 La. Ann. 508; Person v. O’Neal, 32 La. Ann. 228; Gulf State Land & Imp. Co. v. Fasnacht, 47 La. Ann. 1294, 17 South. 800; Scott v. Parry, 108 La. 11, 32 South. 188; Lewis v. Brock, 123 La. 1, 48 South. 563.
For the reasons assigned, the judgment of the Court of Appeal is annulled and reversed, and is now ordered adjudged and decreed that the writ of injunction sued out by Dupuy be, and the same is hereby, sustained and per *689 petuated; and the application of the Aztec Land Company, Limited, to confirm the title acquired from the state auditor is dismissed, said defendant to pay all costs.
PROVOSTY, J., concurs in the decree.