No. 12,789.

MORGAN'S LOUISIANA & TEXAS RAILROAD & STEAMSHIP COMPANY
VS. PAUL PECOT, SHERIFF, ET ALS.

1. Suits relating to taxes or licenses are preference suits, triable without a jury
   and at Chambers if court be not in session. Sec. 56 of Act 106 of 1890.
2. Where there is doubt, an appeal will not be dismissed. If a bond be not suffi-
   cient for the suspensive appeal taken, it yet remains good for the devolutive
   appeal.
3. A distinction is to be drawn between suits to correct an assessment, and suits
   which go to the inherent validity of an assessment and to the legality of the
   tax based thereon.
4. Those of the first class must be instituted within the time fixed by the statute;
   those of the latter class are not subject to such time limit.

APPEAL from the Twenty-fourth Judicial District Court, the
Parish of St. Mary. *Allen, J.*

D. *Caffery & Son* and *Denègre, Blair & Denègre* for Plaintiff, Appel-
lant.

M. J. *Cunningham*, Attorney General, and *Sigur, Milling &
Saunders* for Defendants, Appellees.

Argued and submitted May 3, 1898.
Opinion handed down June 22, 1898.
Rehearing refused June 30, 1898.

ON MOTION TO DISMISS APPEAL.

The opinion of the court was delivered by

BLANCHARD, J. Plaintiff corporation owns and operates a railway
extending through the parish of St. Mary, Louisiana.

Trouble arose over the assessment of its property in said parish for
taxation for the year 1897, and this suit is the sequel.

The parties litigant are as wide apart as to the nature and charac-
ter of the action as they are in respect of the judgment that should
be rendered.

The plaintiff insists that the complaint is not of an over-assess-
ment, but of a void assessment; that it is not a suit to reduce an
assessment, nor to correct an assessment for misdescription or other

47

irregularity, but one to have the assessment of certain property declared void for radical defects, and to enjoin the collection of taxes predicated on the illegal and void assessment on the ground that, being based on an illegal assessment, the taxes themselves are illegal.

Defendants, on the other hand, insist that the action is one instituted against them (to-wit: the tax collector, the assessor and the police jury of the parish of St. Mary) for the purpose of correcting or reducing the assessment made of plaintiff's property for the year 1897.

Pursuant to the provisions of Act No. 92 of 1888, the Board of Commissioners for tne equalization of assessments of railroad, telegraph and telephone lines convened at the town of Lafayette in May, 1897, and proceeded to put a uniform valuation on the roadbed of railroads and on the telegraph and telephone lines running through the parishes the board was authorized to represent.

Having done this, the secretary of the board proceeded to apprise the assessors of the several parishes through which these lines of communication ran, of the action of the board. The letter addressed by him to the assessor of the parish of St. Mary informed the latter that the assessment fixed upon plaintiff's line of railway was $6500 per mile, with a rate of $3500 per mile upon the branch lines thereof.

Having received this communication the assessor proceeded to place the assessment upon his roll. In doing this he first ascertained the number of miles of the main line of plaintiff's railway in the parish, and the number of miles of its branch lines. The result of of his labors as to the assessment of the railway mileage proper appears listed as follows, which we will call List No. 1:

| | |
|---|---:|
| 5 miles main line east of Morgan City | $32,000 |
| 34 miles main line west of Morgan City | 221,000 |
| 12 miles of main line double track | 78,000 |
| 1,784 feet spur track, Barnett's plantation | 1,180 |
| 3,036 feet spur track, Sorrell plantation | 2,010 |
| 3,341 feet spur track, Adeline plantation | 2,210 |
| 1,812 feet spur track, Franklin Refinery | 1,200 |
| 1.615 feet spur track, Alice C. plantation | 1,070 |
| 10,918 feet spur track, Barnett's plantation | 7,230 |
| 1,925 feet spur track, Clark's plantation | 1,270 |
| 3,276 feet spur track, Berwick Lumber Company | 2,170 |
| 1,800 feet spur track, Bonvillain plantation, Cypremort Branch | 1,190 |
| 15 miles Cypremort Branch | 52,500 |
| 1 mile main line track, Morgan City | 6,500 |
| 2,976 feet spur track, Morgan City | 1,790 |
| Total assessment | $411,500 |

He, then, independently of the Board of Equalization, and acting

in his capacity as local assessor for the parish, predicating his action upon Sec. 29 of Act No. 106 of 1890, proceeded to assess the depot buildings, station and section houses and the lots of ground upon which the same are located, belonging to plaintiff company and situated in the parish, together with the Morgan City bridge, and listed the same as follows, which we will call List No. 2:

| | |
|---|---:|
| Section house and lot and depot and lot at Sorrell station | $500 |
| Depot and lot at Adeline plantation | 500 |
| Section house, depot and lot at Baldwin station | 1,000 |
| Section house, depot and lot at Patout plantation | 300 |
| Depot and lot at Glencoe | 200 |
| Section house and lot at Burguieres plantation | 200 |
| Section house and lot at Franklin | 500 |
| Depot and lot at Bayou Sale station | 500 |
| Section house, depot and lot at Calumet station | 300 |
| Section house, depot and lot at Patterson | 500 |
| Section house, depot and lot at Berwick | 500 |
| The Morgan City bridge | 250,000 |
| Depot and lot, town of Franklin | 2,000 |
| Total assessment | $257,000 |

The assessor then assessed against plaintiff, on the non-resident list, the following property, which we will call List No. 3:

| | |
|---|---:|
| Lots 11, 12, 13 and 14, square 21, Morgan City | $200 |
| Lots 1 to 7, square 13, Morgan City | 2,000 |
| Lots 1 to 7, square 23, Morgan City | 150 |
| Depot, wharves, etc., Morgan City | 6,000 |
| Aggregating | $8,350 |

Plaintiff makes no complaint of the action of the Board of Equalization, but does of the subsequent action of the assessor.

Shortly after the adjournment, of the former, plaintiff company filed with the assessor the following list, as showing its mileage in the parish of St. Mary and the proper assessment thereon, according to the rate fixed by the board, to-wit:

| | |
|---|---:|
| Five miles main-line track and all appurtenances, East Morgan City, per mile | $6,500 |
| Thirty-five miles main-line track and all appurtenances, West Morgan City, per mile | 6,500 |
| Twelve miles new double track and all appurtenances, per mile | 3,500 |
| Fifteen miles Cypremort branch track and all appurtenances, per mile | 3,500 |
| One mile main-line track and all appurtenances, corporation Morgan City, per mile | 6,500 |

Whereupon the assessor notified the company that he did not regard the list as a correct one of the property owned by it in the parish, and served upon its agent duplicates of the lists made out by himself, showing values thereto attached.

Plaintiff thereupon filed with the assessors a protest against his listing of its property and valuation thereof, and requested a revision and correction, which application the assessor rejected.

Early in July the police jury of the parish met as a board of review, and plaintiff, through counsel, appeared and filed with that

body a " protest against the legality and correctness of the assessment of its property in St. Mary parish for the year 1897, with a view of securing its correction."

This protest, in substance, recites that the company had theretofore made to the parish assessor full and detailed returns of its property for assessment, etc., which returns it averred to be correct; that the assessment made by the assessor was erroneous; that he had disregarded the valuation adopted by the board of equalization, and in some instances increased such valuation; that he had so assessed some of its property that it amounted to double assessment, and explained how this resulted, etc.; that whereas the board of equalization, in valuing the main line of the company's road at six thousand five hundred dollars per mile and the branch lines at three thousand five hundred dollars per mile, had arrived at the same by including the value of the spur tracks as well as the value of the superstructures, stations, section houses, etc., the assessor had taken the board's figures for the mileage only, and then had proceeded separately to assess the spur tracks, section houses, depots, stations, superstructures, etc., and listed and returned the same for additional and independent taxation against the company; and that he had so separately and independently assessed the bridge crossing Berwick's Bay, notwithstanding the same is used for no other purpose than to support the rails of the road, and is, therefore, only a part of the roadbed and included in its mileage by the board of equalization in arriving at a uniform rate of valuation for the entire length of the track.

The protest concluded by asking the police jury, sitting as a board of review, to correct the assessment of its property in the parish so as to conform to the valuation certified to the assessor by the board of equalization, thus reducing the assessment on its main line from seventy-eight thousand dollars to forty-two thousand dollars, deducting and canceling entirely the separate assessment of the spur tracks, as well as of its section houses, stations, depots and super-, structures, including the bridge at Berwick's Bay.

To this protest and prayer for correction and reduction the assessor made answer in the form of a written objection filed with the police jury against its consideration for the reason that the formalities of law had not been complied with by the agents of the company, they having failed to file a duplicate list of property, sworn to, as required by act 106 of 1890, within the time prescribed by law.

The jury proceeded to hear counsel representing the respective parties and then adopted a resolution sustaining the assessor's objection to consideration of the company's demand for correction, on the ground of failure to seasonably comply with the law.

This was on the seventh of July, 1897. Nothing further was done by the company until about six months later when one of its agents appeared in the office of the tax collector of the parish, stating he desired to pay the taxes of the company, announcing that the same amounted to a certain sum (naming the figure, something a little over one-half of the sum the tax collector claimed to be due), being the exact amount levied against the company the preceding year. The tax collector replied that the sum named would not cover the amount due by the company, and that he would accept it only as a partial payment of the taxes owing. Saying that he desired to make a legal tender of the amount claimed by the company to be due, the agent proceeded to count out the money in the presence of two witnesses and offered the same to the collector, who refused it, except as a partial payment.

Defendants filed a peremptory exception in bar of plaintiff's demand, setting up two grounds: (1) That the company failed to make out a proper list of its property for assessment for the year 1897, failed to make oath to the list that was presented, as the law requires, and that because of such default whatever right the law gave for contesting the correctness or legality of the assessment was forfeited; (2) that the suit comes too late, the same not having been filed and service thereof made within the time prescribed by law for such suits, to-wit: the first day of November of the year in which the assessment is made.

With the prayer for dismissal of the suit and dissolution of the injunction, is one for ten per cent. on the aggregate amount of the taxes and penalties due as attorney's fees, and two per cent. interest per month from January 1, 1898, upon the amount of taxes due.

This exception was called for trial at chambers, whereupon counsel for plaintiff objected to proceedings at chambers, and upon the objection being overruled, excepted and reserved a bill. We find no error in this ruling. Sec. 56 of Act No. 106 of 1890 authorizes such causes as the present one to be tried at chambers.

The exception was sustained, the action dismissed and the injunction dissolved, with judgment against plaintiff for the special costs provided by law, as stated above.

Plaintiff appeals suspensively and devolutively, and is met here by a motion to dismiss the suspensive appeal on the ground of the insufficiency of the amount of the bond.

The order of appeal fixes the amount of the devolutive appeal bond at one hundred dollars, that of the suspensive appeal " according to law." The amount of the bond is ten thousand eight hundred dollars. Whether it be insufficient in amount for a suspensive appeal depends on the amount of taxes due, and that is the very issue this suit is brought to determine. The judgment of the court on the exception fixes no amount of taxes as owing—the percentage allowed as counsel fees being predicated in general terms " on the amount of taxes due by plaintiff." The latter, figuring by one process, arrived at an amount of taxes it thinks due, and gave a suspensive appeal bond accordingly. The defendants, figuring by another process, arrive at a different and larger amount, and finding the bond not given according to its arithmetic, moves to dismiss.

It would seem to have been a proper case for the court to have fixed the amount of both bonds, since no moneyed judgment was rendered, nor exact amount of taxes due stated. However, we do not find it necessary to enter into a calculation to determine what is the precise amount the suspensive appeal bond should have been given for. Where there is doubt the appeal will not be dismissed. Besides, if the bond be not sufficient for a suspensive appeal, it yet remains good for the devolutive appeal. Chaffe vs. Carroll, 34 La. An. 122.

The motion to dismiss is denied.

### ON THE MERITS.

A distinction is to be drawn between suits to correct an assessment, and suits which go to the inherent validity of an assessment and to the legality of the tax based thereon.

In the first class are to be put those suits in which an assessment is complained of and attacked for over-valuation and misdescription of the property listed, involving merely the regularity or correctness of the assessment.

In the second class are to be enumerated those actions attacking an assessment as void on account of radical defects, and drawing into question not the correctness merely of an assessment, but the existence itself of any valid assessment.

In the first class of cases the attack, if successful, results not in destroying but in reducing or correcting the assessment, whereas in the second class of cases the radical defects made the basis of attack, if found to exist, render the assessment null.

It follows that in suits coming within the second class of cases there is involved not only the legality of the taxes based on the assessment attacked, but *the right* to collect any taxes at all predicated on the illegal or void assessment, for the existence of a valid assessment is essential to the collection of taxes.

The time limit invoked in defendant's exception applies to the first class of cases only. Such suits must be brought before the beginning of November of the year in which the assessment complained of is made,. first, it would seem, complying with the provisions of Secs. 19, 23 and 26 of Act No. 106 of 1890. Shattuck & Hoffman vs. City, 39 La. An. 206; Union Oil Co. vs. Campbell, Assessor, 48 La. An. 1351; Kansas City, S. & G. R. W. Company vs. Davis, Tax Collector, 50 La. An. —, Acts of 1890, p. 132, Sec. 26. The action in this class of cases (to test the correctness as to description and value of an assessment) is in the nature of an appeal from the decision of the Board of Review in the country parishes, or the committee on assessments in the city of New Orleans.

But such time limit has no applicability to the second class of cases. In Oteri vs. Parker, Tax Collector, 42 La. An. 376, this court said: " The statutes invoked by counsel, which prescribe a limit of time for the action of taxpayers, in the courts, touching the assessment of their property, have reference to suits to ' test the correctness of such assessments,' and, hence, they can not be construed as applying the same limit or restriction to actions or suits presenting questions of alleged radical defects in the assessments, sufficient to operate the absolute nullity of the same."

The want of a legal assessment, one bringing into contestation the legality of the taxes based thereon, the *right* itself to collect any taxes thereon, is a radical defect which may be urged at any time in opposition to the attempted collection of taxes imposed under such assessment. In Gills vs. Clayton, Assessor, 33 La. An. 286, the court declared the legality of a tax to be in contestation when it is claimed that the tax was originally imposed or assessed in violation of some provision of law, or by one without legal authority to make

such assessment. See also Adler, Goldman & Co. vs. Assessors, 37 La. An. 507; State vs. Lundie, 47 La. An. 1596.

The "want of a legal assessment" was said in Hickman vs. Dawson, 35 La. An. 1087, to be a "radical defect."

The case at bar comes within both classes of cases we have been considering. That is to say, as to part of the listing and valuation of plaintiff's property it is undoubtedly an ordinary action "contesting the correctness" of the same and subject to the time limit; while as to another part it must be viewed as an action bringing into question the inherent validity of the assessment and contesting the legality of the tax—not subject to the time limit.

So far as Lists Nos. 1 and 3, hereinbefore set forth, are concerned, we hold this to be a suit "contesting the correctness" only of the assessments there shown, while as to the property appearing on list number two it must be regarded as an action putting at issue the legality and validity of the assessment and tax sought to be collected.

The Board of Equalization which met at Lafayette officially communicated to the assessor only the rate per mile for the main line of plaintiff's railway, and the rate per mile for all branches thereof, concluding its communication with the following direction: "Note above and assess whatever portion of said lines there may be in your parish accordingly."

This communication, which was the official notification of the action of the board, did not attempt to state the mileage of the main lines and that of the branches of the several railways running through the parishes the board represented, nor did the board undertake to say what tracks were to be considered main line and what branches. All that was left to the several parish assessors. The board merely established a uniform mileage rate. It would seem that *only* was the extent of its authority under Act 92 of 1888.

Receiving the communication of the board, the assessor of St. Mary parish proceeded to ascertain the mileage of the main line and branches of plaintiff's railway in his parish. He assessed what he considered the main line at $6500 per mile and what he considered branches at $3500 per mile. These were the board's figures. In estimating the mileage of the main line he added twelve miles of double track, considering that it came under the head of "main line." If this be erroneous it is nothing but an overvaluation, which

should have been the subject of a suit for corrections *seasonably* brought.

So, too, with the branch lines listed. If he made the mileage of such branch lines greater than they should be, or added spur tracks as branch lines which should not have been added, these are rather disputes " concerning the descriptions of the property listed and the valuation of the same as assessed," in the language of the statute, and suit to test the correctness of the assessment should have been instituted on or before the 1st of November of the year.

Some parts, at least, of such assessments were proper, and if this be so, the assessment was not void, and the errors complained of are not " radical defects," to be taken advantage of by suit filed any time prior to collection of the taxes based thereon.

As to List No. 3, the property included therein appears to be lots of ground in certain squares in Morgan City and wharves there, which are the proper subject of assessment and taxation independant of the assessment of trackage of the railway. With regard to the assessment of such property, contests before the courts over its description and valuation must surely be by suit instituted within the time fixed in the statute.

But as to property included in List No. 2 the situation is entirely different. The question raised is one striking at the existence itself of the right of independent or separate assessment of such property apart from the roadbed or line of railway of which it is claimed to be part. Plaintiff's contention is that section houses, depot buildings, bridges, superstructures, substructures and all erections on its right of way, as well as all parts of the land forming its right of way, are necessarily and legally included in the assessment placed upon its roadbed or trackage, and there is no authority in law for its separate assessment. If this be so, its inclusion in plaintiff's assessment as independent subjects of assessment and taxation is a " radical defect," not subject to the time limit heretofore referred to, and the collection of the tax thereon may be resisted, as is sought to be done in the present action.

The peremptory exception filed by defendants is good and must be maintained, and the suit dismissed so far as the same affects the property and its assessment embraced in Lists Nos. 1 and 3.

But, as to the property and its assessment included in List No. 2, the exception must be overruled and the suit reinstated.

No sufficient tender of payment of taxes due on the property mentioned in Lists 1 and 3 was made, and, therefore, the statutory penalty.of two per cent. per month thereon from the first of January, 1898, as well as the ten per cent. on the amount of such taxes as attorney's fees, must be enforced.

It is therefore ordered, adjudged and .decreed that the judgment appealed from, in so far as it sustains defendant's exception and dismisses plaintiff's action in its bearing upon the property and the assessment thereof included in Lists Nos. 1 and 3, hereinbefore mentioned, be affirmed, and that the special costs—two per cent. per month interest from January 1, 1898, and ten per cent. as attorney's fees, mentioned in said judgment—be reduced so as to apply only on the taxes due on the property included in said Lists 1 and 3.

It is further ordered, etc., that the judgment appealed from, in so far as it sustains said exception and dismisses plaintiff's suit and dissolves its injunction in its bearing on the property and the assessment thereof included in List No. 2, hereinbefore mentioned, be annulled, avoided and reversed, and that to this extent said exception be overruled and the suit and injunction reinstated, to be proceeded with according to the views herein expressed, and the law-costs of appeal to be borne by defendants and appellees.