(63 South. 281.)

No. 19,554.

HOWCOTT v. SMART, State Tax Collector, et al.

In re HOWCOTT.

(March 17, 1913. On Rehearing Oct. 20, 1913.)

*(Syllabus by the Court.)*

1. CERTIORARI (§ 42*)—APPLICATION FOR WRIT—DISMISSAL.

Where, in connection with his application for a writ of certiorari or review, an applicant files a motion, which is made an order of the court, showing that certain transcripts already on file contain the pleadings in the case with respect to which the writ is asked, and praying that he be dispensed from annexing copies of same to his application, the application will not thereafter be dismissed because such copies were not so annexed.

[Ed. Note.—For other cases, see Certiorari, Cent. Dig. §§ 64–73, 75–79, 81–84, 87; Dec. Dig. § 42.*]

2. ASSESSMENT FOR LUMP SUM.

An assessment of the lands of a number of persons confusedly for a lump sum is not an assessment such as the law contemplates, nor can it be made so, as to one of the owners, in a case in which the holdings of the others are also separately assessed, by deducting from such lump sum the aggregate amount of such separate assessments, and calling the remainder the assessed value of the property of such owner. The law provides no such method for the assessment of property, but makes it the duty of the assessor to inspect the particular property to be assessed, and to value it upon its merits, and not as part of, or as connected with, other property to which it bears no legal relation.

3. TAXATION (§ 598*)—PENALTIES.

The law imposes no penalty for an appeal to the courts for the righting of a wrong, in cases where the courts find that there is a wrong to be righted, and the appeal is sustained, hence a property holder who succeeds in an attempt to have an assessment and tax levy decreed null cannot be condemned to pay attorney's fees, interest, etc., as in cases where such attempts are unsuccessful.

[Ed. Note.—For other cases see Taxation, Cent. Dig. § 1220; Dec. Dig. § 598.*]

Breaux, C. J., and Sommerville, J., dissenting.

## On Rehearing.

4. COURTS (§ 224*)—APPELLATE JURISDICTION—TAXATION.

A suit involving the correctness of an assessment, where the tax is less than $2,000, is appealable to the Courts of Appeals, and that portion of the suit which attacks the legality and validity of the tax itself is appealable to the Supreme Court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 487, 608, 609, 614, 616, 617; Dec. Dig. § 224.*]

5. TAXATION (§ 610*)—COLLECTION—INJUNCTION.

No injunction shall issue to prevent the collection of taxes until the taxpayer shall have produced and filed the tax collector's receipt showing that the taxpayer has paid that portion of the tax which is not in contest, and which the taxpayer acknowledges to be due. Section 56, Act No. 170, p. 373, of 1898.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1244; Dec. Dig. § 610.*]

6. TAXATION (§ 499*)—ASSESSMENT—SUIT FOR CORRECTION.

It is too late to file suit for the correction and reduction of an assessment after the time for the bringing of such suit has expired.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 920–924; Dec. Dig. § 499.*]

7. TAXATION (§ 472*)—ASSESSMENT—CORRECTION.

Errors in the description of property and in the owner's name may be corrected by the tax collector. Act No. 170 of 1898, §§ 70, 72, p. 378.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 843; Dec. Dig. § 472.*]

8. TAXATION (§ 598*)—COLLECTION—INTEREST AND ATTORNEY FEES.

Interest and attorney's fees on taxes collected through the assistance of an attorney are payable but one time, as costs, and when the taxes and other penalties are collected. Section 56, Act No. 170 of 1898, p. 373.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1220; Dec. Dig. § 598.*]

Monroe and Land, JJ., dissenting.

Action by Miss Edith E. M. D. Howcott against W. L. Smart, State Tax Collector, and others. Judgment for defendants, and plaintiff applies for certiorari or writ of review to the Court of Appeals, Parish of Livingston. Amended and affirmed on rehearing. See, also, 128 La. 130, 54 South. 586.

Hall, Monroe & Lemann, of New Orleans, and Brittain B. Purser, of Amite, for applicant. R. G. Pleasant, Atty. Gen., and W. H. McClendon, Dist. Atty., of Amite, for respondent.

### Statement of the Case.

MONROE, J. In January, 1909, plaintiff brought this suit to restrain the tax collector of the parish of Livingston from proceeding to enforce the payment of the taxes of 1908, said to have been assessed against lands owned by her in that parish, on the grounds that the *assessment* was illegal because not made in her name, and because it included, in a lump valuation, the lands of other persons, and that the *tax* was illegal, to the extent of three mills, because it had not been included in the budget adopted by

the police jury. She obtained a preliminary injunction, which was shortly afterwards dissolved, on the motion of the tax collector, by a judgment which condemned her to pay the statutory penalties of 10 per cent. and 2 per cent. a month, etc., provided in such cases, from which judgment she appealed to this court, where the judgment was affirmed. Howcott v. Smart, 125 La. 50, 51 South. 64. She then, in January, 1910, filed a supplemental petition, renewing her prayer for an injunction, to which the tax collector interposed an exception of "no cause of action," and there was judgment maintaining the exception, and dismissing her suit, from which she took two appeals, the one, to the Court of Appeals, to preserve her rights with regard to the question of the legality of the assessment, and the other, to this court, on the question of the legality of the tax, and it was here decided that the petition disclosed a cause of action—in the allegation that the three-mill school tax, which defendant proposed to collect, was illegal because not included in the budget—and the judgment appealed from was accordingly reversed, and the case remanded to be heard on its merits. Howcott v. Smart, 128 La. 130, 54 South. 586. The case was then tried in the district court on its merits, and there was judgment rejecting plaintiff's demands, and again condemning her to pay the statutory penalties, from which she took two appeals, as on the previous occasion. Upon the hearing in this court, it was held that the three-mill school tax—not having been included in the budget—was unauthorized by law; wherefore the judgment appealed from was reversed on that point, and it was further held that:

"As plaintiff has succeeded in obtaining judgment for part of her demand, she is entitled to her costs."

And it was so decreed. Howcott v. Smart, 130 La. 699, 58 South. 515. In the mean-

while, the appeal, on the question of the legality of the assessment—which affects not only ·the three-mill school tax, but all the taxes, state and parish—had been pending in the Court of Appeals, and, a month or two after the decision (last above referred to) by this court, the Court of Appeals handed down its opinion and decree, holding that the assessment complained of was illegal, because it included the land of others besides those of plaintiff and her author, and upon which the taxes had been paid. In the course of its opinion, the court refers at some length to the opinion of this court in the case entitled Morgan's L. & T.`R. & S. S. Co. v. Pecot, 50 La. Ann. 739, 23 South. 948, and then proceeds as follows:

"Testing the case at bar by this decision, we find that plaintiff's property was assessed, in the name of the Quaker Realty Company, with property belonging to it and other tracts belonging to other parties. The assessment of property, under the law, must be completed by the assessor on or before June 1st of each year—in this case before the last [first?] day of June, 1908. The title of the plaintiff from the Quaker Realty Company was dated June 1, 1908, and the same was not recorded in Livingston parish until June 3, 1908. We do not see how the assessor could have assessed the property other than in the name of the record owner, which was done. The property described on the assessment roll, and belonging to both plaintiff and the Quaker Realty Company, was properly assessed in the name of said Quaker Realty Company, and, as to its description and valuation, the suit to test the same must have been instituted before the 1st day of November, 1908. As it was not instituted until January 28, 1909, the time limit must apply. As to the property not belonging to plaintiff or the Quaker Realty Company included in the assessment, the time limit must not apply, and the assessment of these properties is illegal. These include the lands of A. W. Harelson, the Frost-Johnson Lumber Company, Mrs. Callihan, Mrs. M. M. Dickerson, which were separately assessed to them, and ·on which the taxes have been paid, and also the dual assessment to Mrs. Hogsett of plaintiff's land in T. 5 S., R. 6 E., being the N. E. ¼ of S. W. ¼ of Sec. 2, and the S. E. ¼ of N. E. ¼ of Sec. 3, on which taxes have been paid. The amount of taxes paid on these lands is not shown by the evidence, and, for the purpose of establishing said amounts, the case will have to be remanded."

The court then states that plaintiff and the Quaker Realty Company were to blame for the failure of the assessor to assess their lands otherwise than he did, for the reason that plaintiff's agent was the president of the company, and, in the latter capacity, made the sale to plaintiff on June 1st, when he knew that the time allowed for completing the assessment had expired, but that he does not appear to have furnished the assessor with the information needed for a correct assessment, and that it does not appear that, either as president or agent, he appeared before the board of review. The decree reads, in part, as follows:

"For the foregoing reasons, the assessment of plaintiff's property in the name of the Quaker Realty Company, together with the property of said company, is declared and adjudged to be legal, * * * and the judgment sustaining said assessment to that extent is affirmed, and the judgment decreeing the assessment of the lands of the Frost-Johnson Lumber Company, Mrs. Callihan, and Mrs. M. M. Dickerson, and also the lands of plaintiff assessed to Mrs. Hogsett, and all contained in said assessment, is reversed, and the injunction as to said lands and taxes is reinstated and made perpetual. * * * It is further ordered that the case be remanded * * * for the purpose of ascertaining the amount of taxes paid on the properties hereinabove decreed to be illegally assessed, and, when same is ascertained, said amount is to be deducted from the total tax assessed to the Quaker Realty Company, and on which the 10 per cent. and 2 per cent. allowed by the judgment will be calculated. In all other respects the judgment of the· district court is affirmed. Defendant to pay costs of appeal. All other costs to be paid by plaintiff."

Plaintiff has now applied to this court for a review of the judgment so rendered, and she complains of it, and alleges error in the following particulars, viz.: That it condemns her to pay all the costs of the district court, though she was partially successful in her suit; that it also condemns her to pay the statutory penalties imposed for invoking the writ of injunction to restrain the collection of taxes, though the writ so invoked has been sustained; that the judgment does not finally declare the nullity of

the assessment in question and order its cancellation.

### Opinion—On Suggestion that Application be Dismissed.

[1] Counsel representing defendant suggest that the writ issued improvidently in this case, for the reason that—

"there were not filed with the application copies of the petition, answer, or other pleading in the case."

On the day on which the application was filed, however, the applicant presented a motion, to the effect that the transcripts, Nos. 18,143 and 19,309, which are in this court, and contain all the pleadings in question, be referred to for the purposes of said application, and that she be dispensed from attaching others thereto, and it was so ordered.

### On the Merits.

The ruling of this court (in considering the appeal from the same judgment with which the respondent court has dealt), to the effect that, "as plaintiff has succeeded in obtaining a judgment for part of her demands, she is entitled to costs," was based upon the textual provisions of the Code of Practice and a well-settled jurisprudence, and, we think, should have been applied in this case. C. P. 155; Manning v. Ayraud, 15 La. Ann. 126; McCarthy v. Baze, 26 La. Ann. 382; Lamotte v. Martin, 52 La. Ann. 864, 27 South. 291.

[2] It is conceded, in the opinion here made the subject of review, that it was illegal to include in a lump assessment the lands of plaintiff and her author with those of Harelson, Callihan, Dickerson, Frost-Johnson Lumber Company, and Hogsett, and, in view of that concession, which was inevitable, we are unable to concur with our learned Brethren that there has been, in contemplation of law, any assessment of plaintiff's lands which can be disentangled or vali-dated in the manner directed by the judgment complained of, nor do we see in what way plaintiff or her author is to blame, because lands, standing in the name of the Quaker Realty Company long prior to the date upon which the assessments for 1908 should have been completed, were assessed confusedly with lands belonging to the parties above named, though the facts that they were conveyed by the Quaker Realty Company to plaintiff only on June 1st, and that the conveyance was recorded only on June 3d, may be a sufficient reason for the attempt to assess them to the company rather than to plaintiff. That a single lump assessment, that includes the holdings of different owners, is void, and, in effect, no assessment is a generally accepted doctrine which has been recognized and applied by this court in a number of instances. Person v. O'Neal, 32 La. Ann. 228; McWilliams v. Michel, 43 La. Ann. 984, 10 South. 11; Norres v. Hays, 44 La. Ann. 907, 11 South. 462; Howcott v. Board of Com'rs of Fifth Louisiana Levee Dist., 46 La. Ann. 322, 14 South. 848; George v. Cole, 109 La. 816, 33 South. 784; Waggoner v. Maumus, 112 La. 229, 36 South. 332; Head v. Howcott Land Co., 119 La. 331, 44 South. 117.

And we are clearly of opinion that, where, in such case, the holdings of a number of persons have been included, confusedly, in a single assessment, though in all instances save one such holdings have also been separately assessed, no assessment, within the meaning and intent of the law, can be made of the one holding by merely deducting from the total lump valuation the aggregate of the amounts for which the other holdings were separately assessed, and calling the remainder the assessed value of the excepted holding which was not separately assessed. The law provides no such method for the assessment of property, but makes it the duty

of the assessor to inspect the particular property to be assessed, and to value it upon its merits, and not as part of, and connected with, property to which it bears no relation, save, possibly, that of juxtaposition, and to which, in some instances in this case, it does not even bear that relation. A single instance (of several which present themselves) may serve to show that the proposed method of arriving at the value of plaintiff's land, even if it could be said to resemble an assessment, is wholly impracticable.

The W. ½ of section 15 and N. E. ¼ of section 16, containing together 477 acres, were assessed separately to Harelson at $1,800, or, say, $4 ($3$^{869}$/$_{477}$) an acre. The W. ½ of section 15 (317 acres) was also included with plaintiff's land in the lump assessment of 4,325 acres at $76,000, or, say, $17.-50 ($17 $^{99}$/$_{173}$) per acre. Deducting the 477 acres from the 4,325, we have 3,848 acres; deducting the $1,800 from the $76,000, we have $74,200; dividing the $74,200 by the 3,848, we have, say, $19.50 ($19$^{34}$/$_{89}$), so that the effect of the assessment by the process of deduction (if the whole of Harelson's 477 acres were taken into consideration) would be to increase plaintiff's assessment from, say, $17.50 to $19.50, or $2 an acre.

But it was only the W. ½ of section 15, containing 317 acres, that was assessed confusedly with plaintiff's land, and, when we come to deduct the value of that tract, on the basis of its supposed separate assessment, from the lump assessment in which it is included with plaintiff's land, we find that there was no separate assessment, but that it was assessed with the N. E. ¼ of section 16, containing 160 acres, belonging to Harelson, and that we can arrive at its value only by assuming that its every acre and every acre of the N. E. ¼ of section 16 were of the same value.

[3] There is, therefore, no way in which the attempted assessment here in question can be cured of its defects or validated, and this court can do nothing but declare its invalidity and order it canceled, which will necessarily relieve plaintiff of the penalties imposed by the district court and Court of Appeals, since the law imposes no penalty for appealing to the courts for the righting of a wrong, when the courts find that there is a wrong to be righted, and the appeal is sustained.

It is therefore ordered, adjudged, and decreed that the judgment of the Court of Appeals here complained of, as also the judgment of the district court in this case, be set aside, and that there now be judgment in favor of plaintiff, as prayed for in her original petition and supplemental petition, decreeing null, void, and of no effect the attempted assessment, for the taxes of 1908, of her land in Livingston parish, as set forth in said petition, and perpetually enjoining the defendants, tax collector and police jury, from attempting to enforce the collection of any taxes based thereon. It is further decreed that said defendants pay all costs, save those for which plaintiff was condemned by the judgment of this court handed down on December 13, 1909.

The CHIEF JUSTICE and SOMMERVILLE, J., dissent.

On Rehearing.

SOMMERVILLE, J. Plaintiff, the owner of 3,004.52 acres of land in the parish of Livingston, alleges that her property has been erroneously assessed together with that of others, aggregating 4,325 acres. She also alleges that the budget of the police jury of the parish of Livingston for the year 1908 is illegal, and that the parish tax claimed on her land is null and void, and cannot be collected. She applied for and obtained from the clerk of the court a preliminary injunc-

tion, preventing the tax collector and the police jury from collecting the taxes claimed to be due on her property.

This is the fourth time this case has been before us. 125 La. 50, 51 South. 64; 128 La. 130, 54 South. 586; 130 La. 699, 58 South. 515. It is now before us on an application for writs of certiorari and review to the Court of Appeals for Livingston parish.

In the first case (125 La. 50, 51 South. 64) we hold that the preliminary injunction in plaintiff's behalf was issued illegally, and we dismissed the suit with the statutory damages of 2 per cent. per month and the penalty of 10 per cent. attorney's fees upon the "aggregate amount of taxes and penalties" to be collected, with costs of court. We supposed at the time that the case was finally disposed of; but, before the judgment referred to had become executory, plaintiff filed an amended or supplemental petition, of which we said, in 128 La. 130, 54 South. 586, it—

"presents the appearance of an ancillary action brought by plaintiff to have questions not heretofore decided, although pleaded, passed upon by the court in this second injunction."

That second appeal was taken by plaintiff from a judgment maintaining an exception of no cause of action filed on behalf of the defendants. We therein held that our first judgment was final as to the damages allowed, and that the exception of no cause of action had been wrongfully maintained as to a part of the suit. We eliminated from our consideration all questions relating to the correctness of the assessment complained of, and confined ourselves to the question of nullity of the tax over which this court had appellate jurisdiction, and, finding that the petition contained a cause of action for the annulment of the parish tax for the support of public schools, the judgment appealed from was reversed to that extent. The suit and injunction were reinstated, and the case was remanded to be tried on the merits, the costs of the appeal to be paid by the appellee.

On the third appeal (130 La. 699, 58 South. 515) we found that the tax for the public schools had been illegally assessed, that it had not been budgeted for, and was null and void. The judgment of the trial court was reversed as to said school tax, and amended so as to perpetually enjoin the collection of the three-mill tax for public schools; defendants were condemned to pay costs of court in this and the trial court. In both of these two last judgments, having been apprised of the fact that an appeal had been lodged in the Court of Appeals involving the correctness of the assessment, we refrained from expressing any opinion thereon. That court had jurisdiction of that matter; the amount of the tax being under the jurisdictional limit of this court.

We are now asked to review the judgment of the Court of Appeals, which holds that the assessment of plaintiff's property is valid, and that plaintiff should pay the costs of the district court, and a penalty of 2 per cent. per month on the amount of the taxes, and 10 per cent. attorney's fees on the aggregate amount of taxes and penalties.

It is not surprising that there is confusion resulting from the three judgments rendered on several appeals taken in the case to two appellate courts.

[4] As we have control and general supervision over all inferior courts in the state, it now becomes our duty, on the application of relatrix, to correct as far as possible and reconcile all differences which appear in the several judgments referred to. We shall also review the decision of the Court of Appeals on the irregularity of the assessment about which plaintiff complains.

Plaintiff is the owner of 3,004.52 acres of land, which were assessed as 4,325 acres, and she complains of the judgment of the Court of Appeals in that it does not cancel and annul this lump assessment, which as-

sessment she claims to be an indivisible entity.

Relatrix alleges in her petition, and she argues, the impossibility of dividing or correcting the assessment complained of, and therefore asks that that assessment be annulled, and a new assessment ordered to be made of her property. We agree with our learned brothers of the Court of Appeals and of the district court that the assessment is not null, and that the amount of the taxes due by plaintiff may be readily determined. Relatrix owns 3,004.52 acres, while the assessment in her name is for 4,325 acres, and she alleges in her petition that the difference between the two amounts belongs to five different persons, namely: Mrs. Louisa Hogsett, whose property is assessed at $15 per acre; A. W. Harelson, whose property is assessed at $4 per acre; Mrs. Callihan and Mrs. M. M. Dickerson, whose property is assessed at $8 per acre; and the Frost-Johnson Lumber Company, whose property is assessed at $6 per acre. And she gives the exact description of the property belonging to these five persons in each several instance. She also alleges and proves that these five persons have paid the taxes on the property belonging and regularly assessed to them. With this knowledge it would have been an easy matter for plaintiff to have paid the taxes due by her on the property owned by her. The tax collector in his answer judicially admits the errors alleged in plaintiff's petition, to the effect that the property of five other persons, naming them, had been assessed to plaintiff. He describes the property of these five several persons, and he admits the payment by them of the taxes due thereon. In fact, there are double assessments of the property belonging to these five persons; five assessments are in the names of the owners, and another assessment of their property in the name of plaintiff. The tax collector further alleges in his answer:

"That he had at all times been ready and willing to accept the taxes due by said plaintiff upon her property whenever she offered to pay the same."

That the tax collector has the right to make corrections of names and descriptions under the circumstances here presented, and to receive the taxes due by plaintiff on her property, is sustained by the following provisions of the revenue law (Act 170 of 1898, pp. 377, 378):

"Sec. 68. Be it further enacted, etc. That upon statement of the facts made under oath and verified and approved by the assessor and collector of the parish or district in which the property is situated, that the assessment is a clerical error, or an erroneous or double assessment, or that the property is exempt by article 230, of the Constitution, from taxation; the auditor may authorize the collector to cancel the assessment on the roll on file in his office, and the recorder of mortgages to erase and cancel the inscription of tax mortgage, and if sold to cancel the sale."

"Sec. 70. That if any error in the description * * * be discovered by the tax collector or sheriff, it shall be his duty to note the correct description and name on the tax rolls, and to advertise and sell said property by its correct description; provided, no such change shall be made without ten days' notice to the real owner of such property, and the proof of such service shall be in writing and filed in the tax collector's office."

"Sec. 72. That whenever property has been listed and assessed in the name of unknown owners, or of persons other than the real owners, and the tax collector shall subsequently discover the real owner thereof, it shall be his duty to at once notify the said real owner that certain described property belonging to him or her has been assessed to unknown owners, or to any other person or persons, and calling upon him or her to come forward within ten days from the service of said notice, and show cause why the listing and valuation of the said property should not stand as final; and the said collector shall also at once notify the assessor of the fact that a certain described property or· properties assessed to unknown owners, or to persons other than the real owners, has been discovered to be the property of a certain named person or persons, and the said assessor shall, after ten days' notice to the owner, make the necessary correction upon his rolls and the rolls of the offices of the recorder of mortgages and auditor of public accounts."

[5-7] The Court of Appeals correctly ruled that plaintiff was not entitled to an injunc-

tion to prevent the tax collector from collecting the amount of taxes due by plaintiff. Besides, this suit was not brought within the time limit provided in the law for filing suits for the reduction of assessments or the correction of same. The judgment of the Court of Appeals on the finality and correctness of the assessment will not be disturbed.

The tax collector in his answer, and by way of exception, made several objections to the suit which have not been passed upon. In the first appeal before us (125 La. 50, 51 South. 64) we simply notice that the law provides that "no injunction restraining the collection of any tax or taxes shall be issued" except under certain conditions. And we found one of these conditions to be that no injunction against the collection of taxes for any part or portion should issue except after the issuance of a rule nisi, to be served on the tax collector, returnable in three days, and we dissolved the injunction, and dismissed the suit at appellant's costs, because plaintiff had not caused a rule nisi to be issued before obtaining an injunction. In the two following appeals we confined our consideration to the validity of the tax for public school purposes, over which matter we had jurisdiction. We did not rule upon other matters. We did not consider that provision of law which says that:

"No injunction shall issue against the collection of that part or portion in contest until the tax payer shall have produced and filed the tax collector's receipt showing that the tax payer has paid that portion of the tax which is not in contest, and which the tax payer acknowledges to be due." Section 56, p. 374, Act No. 170, 1898.

Plaintiff, in her petition, did not formally admit any amount of taxes to be due; but she alleged ownership of certain property, and she knew that the taxes were due thereon. On the contrary, she alleged that, because her property was assessed together with that of others, she was not able to pay the taxes thereon; but the law and the judgment of the Court of Appeals in this case are against her on this point. The injunction should not have issued until plaintiff had paid the taxes which were due on the property which she admitted she owned.

Relative to the costs of the trial court, which plaintiff alleges the Court of Appeals to have erroneously rendered a judgment against her for, that court has erred She has obtained partial relief; the decree for costs should have been in her favor. Article 155, C. C. P. This is in conformity with our judgment in this case. 130 La. 699, 58 South. 515.

[8] Relatrix next complains that the judgment of the Court of Appeals condemns her to pay additional attorney's fees and penalties to those which we had condemned her to pay on her first appeal. Such penalties are provided for in section 56 of the revenue act of 1898, p. 373, as follows:

"That the attorney at law who represents the tax collector, or tax collectors in all proceedings for the reduction of assessments and collection of taxes (license taxes excepted), and in all injunction proceedings wherein the tax collector or tax collectors are sought to be restrained from the collection of taxes, shall receive a compensation of ten per cent. on the amount collected, calculating same upon the aggregate amount of taxes and penalties so collected as the result of aforesaid proceedings. The aforesaid commission to the attorney at law shall be paid by the party against whom the judgment is rendered in whole or in part, and shall be collected by the tax collector as costs at the same time that the taxes and other penalties are collected."

But interest and attorney's fees can be collected under the law but one time, and, as we condemn plaintiff to pay these penalties and attorney's fee in the judgment in 125 La. 50, 51 South. 64, and that judgment is final, plaintiff cannot be condemned to pay these penalties and fees a second time.

It is therefore ordered, adjudged, and decreed that the judgment of the court of appeals in this case be amended by striking therefrom those portions which con-

demn relatrix to pay the costs of the trial court after the filing of her second, or amended and supplemental, petition, and that portion condemning her to pay additional penalties and attorney's fees. As thus amended, the judgment is approved and affirmed.

MONROE, J., dissents, and adheres to views heretofore expressed.

See concurring opinions of BREAUX, C. J., and PROVOSTY, J., 63 South. 287.

See dissenting opinion of LAND, J., 63 South. 288.